UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael S. Kimm, Esq. (MK4476)
Andrey Demidov, Esq.
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
*Attorneys for Plaintiffs*

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, for themselves and for all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>WICKED FASHIONS, INC., dba SOUTH POLE and SOUTH POLE FASHIONS, IRIS YOON, JEFFREY CHOI aka JONGMYUN CHOI,, and JOHN DOES 1 THROUGH 5,<br><br>Defendants. | 17-CV-<br><br>**Complaint for Collective and Class Action for Wage and Hour Violations and Harassment, With Jury Demand** |

Named Plaintiffs Jane Doe 1 and Jane Doe 2, on behalf of themselves and all others similarly situated, for this collective-group action and class-action complaint against the above-named defendants, state upon knowledge except where stated upon information and belief:

**THE PARTIES**

1. At all relevant times, Named Plaintiff Jane Doe 1 was and is an individual who is a domiciliary and resident of New Jersey and resides Bergen County, New Jersey. She brings this action under the pseudonym of Jane Doe 1in order to avoid being blacklisted by

1

defendants in her line of work in the small Korean-American community where employers and potential employers may be known to the defendants.

2. At all relevant times, Named Plaintiff Jane Doe 2 was an individual who resided in New Jersey and was employed by defendants as a staff worker. Like Jane Doe 1, Jane Doe 2 requests that the Court permit her to pursue this action under this pseudonym as she fears being black listed among Korean companies based upon information disseminated by the defendants.

3. At all relevant times defendant Wicked Fashions, Inc., dba Southpole, South Pole, or South Pole Fashions, is a company believed to be organized in New York, on or about May 6, 1991, under NY Department of State identification number 1545673. Upon information and belief, defendant Wicked Fashion's business principally centers in New York City and it maintains one or more office addresses in Fort Lee, New Jersey.

4. At all relevant times, defendant Iris Yoon is a supervisory employee of Wicked Fashions who was superior to plaintiff and, in such capacity, committed violations of law as more-fully described below. Defendant Iris Yoon's personal address is presently unknown to plaintiffs but she is believed to maintain an address for service of process at the offices of Wicked Fashions.

5. Defendant Jeffrey Choi aka Jongmyun Choi is a supervisory employee of Wicked Fashions who was one of plaintiff's immediate superiors and who, in such capacity, committed violations of law as more-fully described below. Defendant Jeffrey Choi's

personal address is presently unknown to plaintiff but he is believed to maintain an address for service of process at the offices of Wicked Fashions.

6. John Does 1 through 5 are owners, officers, and managers who are believed to be Named Plaintiffs' employers within the meaning of the Fair Labor Standards Act ("FLSA") and/or the New York Labor Laws ("NYLL"), but whose exact identities are presently unknown to Named Plaintiffs and who may be joined later in the action.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action as it arises under federal law under 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 216(b), as it implicates the Fair Labor Standards Act. State claims are appropriate under the supplemental jurisdiction statute 28 U.S.C. § 1367 and New York Labor Law; New York Human Rights Law; and other laws. Venue is proper under 28 U.S.C. § 1391 because the corporate defendant is incorporated or registered in this District; and defendant maintains its business address at 525 7th Avenue, Suite 1709, New York, NY 10018, according to its own website. See http://www.southpole-usa.com/about-us2.

## BACKGROUND

8. Defendant Wicked Fashions is a manufacturer, importer, distributer and wholesaler of apparel products. "Southpole" is one of the brands used to sell defendant Wicked Fashions' products in the United States. New York is one of the largest market of defendant Wicked Fashion's products.

### Jane Doe 1

9. Plaintiff Jane Doe 1 was hired by defendants on or about January 26, 2015. Plaintiff worked in the Production Department of defendant Wicked Fashions doing primarily quality control and customer follow up responsibilities, which entailed essentially overseeing the pre-production progress of apparel products, consisting of several hundred individual clothing articles. At all relevant times, plaintiff was a non-managerial staff worker, among several others. From the time she was hired until she stopped working, Plaintiff served as a staff worker and handled routine tasks including quality control and customer follow up responsibilities in the production chain.

10. Named Plaintiff Jane Doe 1 is one of many similar individuals charged with similar or substantially similar work duties, who were employed through defendants, who were provided with no overtime compensation, no lunch break, and no break time. Jane Doe 1 and others who were similarly situated with her worked more than 8 hours a day, routinely worked overtime, and was not paid proper overtime compensation. Jane Doe 1 received a "weekly salary" that covered all of her hours worked, regardless of the number of h ours, and failed to account for substantial overtime work beyond the 40 hour "regular rate of pay" period. Jane Doe 1 was denied lawful wage and hour benefits including overtime, spread of hours, and any other applicable benefit.

11. Defendants failed to provide Jane Doe 1 and others who were similarly situated as she with accurate W2 wage statements at the end of each years; failed to provide accurate

weekly pay records and computations; and failed to provide her with the proper employer contribution for social security and other benefits to which he was entitled.

12. Defendants have not provided a proper weekly breakdown of the hours worked, wages earned, overtime or spread of hours earned. Defendants have failed to retain records of hours worked by Jane Doe 1 and all other employees who are similarly situated. Defendants failed to keep Jane Doe 1 and other employees' work hours from the moment they began activities that benefitted the employer until they were no longer so engaged. In order to avoid issues of overtime, staff employees were required to create a false documentation of their "end of work" time in some case. The aggregate hours worked was routinely more than 13 hours a day, at least five days a week, routinely six days a week; many holidays.

13. Jane Doe 1 routinely worked from before 9AM to well after 1AM the next morning. Regardless of the number of hours actually worked, Jane Doe 1 was routinely denied a lunch period; was routinely denied break times; and was routinely denied any food after she would have taken lunch around noon or 1PM, for 12 or 13 hours thereafter. Jane Doe 1 routinely purchased her own food while being required to work past midnight, and even then was denied a meal break, ostensibly to "meet deadlines."

14. Due to defendants' violations, Jane Doe 1 and all persons who are similarly situated has sustained financial losses.

## Jane Doe 2

15. In July 2014, Jane Doe 2 was hired as an "intern" and placed in a position of a working staff employee without compensation, without overtime compensation and without other benefits to which she was entitled. Rather than providing true "internship," defendants used Jane Doe 2 essentially for production purposes without compensation. Plaintiff Jane Doe 2 was not provided with "training" that was functionally similar to an educational setting. Rather than building on any educational experience, Jane Doe 2 was required to learn production skills and put them to immediate use for benefit of the employer. Any training that was provided was in fact on-the-job provided for benefit of the company and not for Jane Doe 2 as the "intern."

16. During the regular work hours and for many hours after regular business hours, Jane Doe 2 engaged in actual operations of the employer. Jane Doe 2's work augmented the non-intern staff's work load. Jane Doe 2 received the same kind of deficient supervision as the other staff workers and thus was treated as being part of the work force. No training to the advantage of Jane Doe 2 was provided during the internship.

17. After a year, plaintiff Jane Doe 2's status was converted to a staff worker and she was paid a flat, weekly salary without proper overtime compensation or other compensation; did not receive a lunch hour; and did not receive any late night meal time even when she worked until midnight or beyond. Like Jane Doe 1, Jane Doe 2 was not paid proper wages; was routinely required to work overtime; and was denied lunch breaks and any other break

times.

18. Defendants employed numerous "interns" and placed them in staff work positions, without an internship being operated in earnest. Defendants employed numerous staff workers and failed to provide them with proper compensation or overtime.

## INTERSTATE COMMERCE

19. Defendants are engaged in activities in or affecting interstate commerce, and each is generating yearly revenues well in excess of the $500,000 requirement under the applicable statute. Upon information and belief, defendant Wicked Fashions alone is believed to generate revenue in the hundreds of millions of dollars per year.

## COLLECTIVE ACTION ALLEGATIONS

20. Defendants applied essentially the same pay calculus for all other employees as in Plaintiffs' case. Plaintiffs and their colleagues have similarly been suffered to work, with denied wages and hours, denied spread of hours and denied benefits under the labor laws, as a group.

21. Plaintiffs and others who are similarly situated as name plaintiffs are not executive, professional or otherwise exempt from the wage and hour laws. In essence, Named plaintiff and others who are similarly situated as they were staff workers handling a variety of apparel-production related tasks by dealing with suppliers, manufacturers, or customers. Their time and work product are totally controlled by their employers as wage earners; their duties are prescribed and required to be followed by them. They did not

exercise "business judgment" and were required to adhere to the employers' dictates and policies governing the buyers; and plaintiffs did not function in any managerial capacity but were essentially staff workers in their departments.

22. Named plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all collective action plaintiffs who are similarly situated. Specifically, Named plaintiffs seek to represent classes of persons who worked or work for defendants as "weekly salaried employee" and "unpaid interns" and who were/are subject to defendants' unlawful compensation practices and policies at any point from six years prior to the filing of this action the present (members of this putative class are referred to as "Collective Action Plaintiffs").

23. Plaintiffs' claims are typical of the claims of Collective Action Plaintiffs because the Named plaintiffs, like all Collective Action Plaintiffs, were employees of defendants who were not paid proper wages as required by the FLSA and the NYLL.

24. Plaintiffs will fairly and adequately protect the interests of Collective Action Plaintiffs, because Named plaintiffs' interests are consistent with, and not antagonistic, to those of the Collective Action Plaintiffs. Named plaintiff have retained counsel with substantial experience in the prosecution of claims involving employee wage and hour and other labor and employment disputes.

25. No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action. The class will be easily

identifiable from defendants' business records, along with their contact information.

26. Similarly-situated employees are known to defendants, are readily identifiable by defendants, and can be located through defendants' business records. Named plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of defendants; however, on information and belief, the number of potential class members is estimated to be 40 or more.

27. Questions of law and fact that are common to the members of the collective group predominate over questions that affect only individual members of the group. Among the questions of law and fact that are common to the collective group is whether defendants failed to pay the putative collective group the required wages for all hours worked, plus over time, and any other compensation due, including liquidated damages.

28. Collective Action Plaintiffs include those who were not paid proper hourly wages, overtime, and lunch hour. Despite the promise of a one-hour lunch break, in reality, plaintiff and others who are similarly situated were expected to work, and in fact worked, during the lunch hour because that was deemed the "busiest period" of the work day. All Collective Action Plaintiffs were required to work far more hours than 40 a week and to effectively surrender their lunch hour due to required peak-time productivity. In all, the Collective Action Plaintiffs routinely worked work days of 13 hours or more, at least five days a week.

29. For the foregoing reasons, Named plaintiffs should be permitted to bring this action as a collective action for and on behalf of himself and those employees similarly

situated as to the following collective issues:

      A.    Defendants' failure to pay proper wages and overtime wages;

      B.    Defendants' failure to pay lunch hour wages;

      C.    Defendants' failure to pay spread of hours;

      D.    Defendants' failure to keep and provide to each employee proper wage and hour records.

## CLASS ACTION ALLEGATIONS

30. The foregoing paragraphs are adopted by reference and incorporated.

31. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Named plaintiffs bring this action on behalf of herself and those similarly situated with them ("Class Plaintiffs"). Specifically, Named Plaintiffs seek to represent a class of all persons who worked or work for defendants in the past four years and who were not paid lawful compensation for their hours.

32. The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of defendants; however, on information and belief, the number of potential class members is estimated to be sufficiently high that individual joinder is not practicable.

33. Named Plaintiffs' claims are typical of the claims of the putative class members, because each Named Plaintiff, like all Class Plaintiffs, was an employee of defendants and has been damaged as a result of defendants' violation of the FLSA while defendants-

employers have been unjustly enriched through wage theft or knowing miscomputation or other artifice.

34. Named Plaintiffs will fairly and adequately protect the interests of the putative class because Named Plaintiff's interests are coincident with, and not antagonistic to, those of the class. Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes and is fully able to pursue this action.

35. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from defendants' business records. Upon information and belief, defendants maintain business records in the form of "List of Employees" and "Job Assignments" which are maintained on a daily, weekly, monthly and yearly bases, showing the employees' names, work location, the job duties, the revenues associated with each employee's performance and so forth, and other relevant business information, within defendants' computer systems and in their books and records.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish

incompatible standards of conduct for defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against defendants.

37. Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are:

    A.    Defendants' failure to pay proper wages and overtime wages;

    B.    Defendants' failure to pay lunch hour wages;

    C.    Defendants' failure to pay spread of hours;

    D.    Defendants' failure to keep and provide to each employee proper wage and hour records.

38. Defendants and each of them have been unjustly enriched at Class Plaintiffs' expense because of their policy of underpaying the employees by paying a purported lump sum "weekly salary" regardless of the total "hours worked" and the "regular rate of pay"; under-counting the hours worked; and deliberately failing to keep wage and hour records; failing to provide weekly review/accounting of wages earned; and failing to pay employer contributions of social security tax and other benefits. Therefore, Named Plaintiffs should be permitted to bring claims as a class action on behalf of himself along with the class mentioned above.

## **CLAIMS FOR RELIEF**

### **Count One – FLSA Wage and Hour Violations**

39. The foregoing paragraphs are incorporated by reference.

40. By reason of the foregoing, defendants, as employer and supervisor, owner, manager, or other person of responsibility of Named Plaintiff and Collective Action Plaintiffs, committed one or more violations of the federal wage and hour laws by deliberately underpaying Named Plaintiffs and others who are similarly situated including:

    A.    Defendants' failure to pay proper wages and overtime wages;

    B.    Defendants' failure to pay lunch hour wages;

    C.    Defendants' failure to pay spread of hours;

    D.    Defendants' failure to keep and provide to each employee proper wage and hour records.

### **Count Two – NYLL Wage and Hour Violations**

41. The foregoing paragraphs are incorporated by reference.

42. By reason of the foregoing, defendants have violated the New York State Labor Law and in particular the wage and hour provisions by failing to pay proper wages, proper overtime, spread of hours, and by failing to provide proper documentation and accounting of employees' wages and hours.

43. Due to defendants' violations, Named Plaintiffs and others who are similarly situated have sustained losses while defendants-employers have unjustly benefitted from the

unfair wage payment practices.

### Count Three – Failure to Keep and Provide Proper Records

44. The foregoing paragraphs are incorporated by reference.

45. Defendants failed to keep proper record of each employee's work hours and lunch hours and other intervals of the work day which was spent on behalf of the employer(s).

46. Defendants routinely required plaintiff and others to manufacture fictitious "time out" notations by hand written or other method so as to retain "proof" that each employee "never worked overtime" and thus the defendants would never be in violation of any labor law.

47. Defendants consciously pursued a policy of suppressing workers from recording the correct time; defendants failed to provide a means by which to record time correctly, such as a time clock or mobile phone application or computer "log in" application or the like. By such methods, defendants maintained a work force that was actually working extensive overtime but was not paid and the work force was documented to have been enjoying a short set of working hours when the truth was actually to the contrary.

### Count Four – Failure to Provide Periodic Notice as to Wages

48. The foregoing paragraphs are incorporated by reference.

49. Defendants failed to provide plaintiffs with periodic notices as to the wages; and calculation of wages. Defendants are believed to have so failed to provide such notices to all other similarly situated workers.

## Count Five – Harassment in the Work Place

50. The foregoing paragraphs are incorporated by reference.

51. Defendant Jeffrey Choi, a supervising employee, routinely harassed plaintiff Jane Doe 1 by using obscene epithets during office communications with plaintiff which caused plaintiff significant emotional distress and discomfort. Jane Doe 1 complained to the Human Resources Department multiple times, speaking with its Department Head Gayong Yoon. Despite the repeated reports filed by plaintiff, the company disregarded each of Jane Doe 1's complaints and, shockingly, even disclosed the details of plaintiff's complaints to the harasser himself, Jeffrey Choi, and Choi later mocked plaintiff for her futile complaints.

52. The harassing environment, with no remedial action taken by the ultimate employer, was so continuing and pervasive as to create a distinctly hostile environment where normal work behavior could not survive, and plaintiff was ultimately coerced to leaving her work position and rendering her unemployed.

WHEREFORE, Named Plaintiffs demand for themselves and each of them, and on behalf of all others who are similarly situated, on whose behalf this action is also brought, judgment against the defendants, as follows:

A. Conditionally certifying the case as a collective action, and as a class action;

B. Permanently certifying the case as a collective action and class action;

C. Granting compensatory damages for unpaid wages and benefits, punitive damages, liquidated damages, spread of hours, and other compensatory and remedial remuneration;

D. Granting liquidated damages;

E. Granting pre-judgment and post-judgment interest;

F. Granting punitive damages;

G. Granting legal fees; other professional fees; costs; and

H. Any other relief the Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Civil Rules, Named Plaintiffs respectfully request a trial by jury.

Dated: November 14, 2017                              /s/ Michael S. Kimm

                                                      Michael S. Kimm, Esq.
                                                     Andrey Demidov, Esq.
                                                     KIMM LAW FIRM
                                                     333 Sylvan Avenue, Suite 106
                                                     Englewood Cliffs, New Jersey 07632
                                                     T: 201-569-2880
                                                     *Attorneys for Plaintiffs*